# EXHIBITS

**Exhibit A**      Complaint

**Exhibit B**      Certificate of Compulsory Arbitration

**EXHIBIT A**

**Notice of Removal By Defendant Continental Casualty Company**

BDPJ Houston, LLC v. Continental Casualty Company

MICHAEL K. JEANES
Clerk of the Superior Court
By Julie Garcia, Deputy
Date 04/21/2010 Time 17:10:28
Description              Amount
———— CASE# CV2010-012465 ————
CIVIL NEW COMPLAINT        301.00

TOTAL AMOUNT               301.00
          Receipt# 20512913

*Cohen Kennedy Dowd & Quigley*
*The Camelback Esplanade I*
*2425 East Camelback Road • Suite 1100*
*Phoenix, Arizona 85016*
*Telephone 602•252•8400  Facsimile 602•252•5339*
*E-mail filings@ckdqlaw.com*

Daniel G. Dowd (012115) – DDowd@ckdqlaw.com
John W. Shamblin (018610) – JShamblin@ckdqlaw.com
Jill G. Bonnin (022455) – JBonnin@ckdqlaw.com
Attorneys for Plaintiffs

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

CV2010-012465

| | |
|---|---|
| BDPJ HOUSTON, LLC, a Texas Limited Liability Company, | Cause No: _____ |
| Plaintiff, | **COMPLAINT** |
| vs. | **(Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing)** |
| CONTINENTAL CASUALTY COMPANY, an Illinois Corporation, | |
| Defendant. | |

Plaintiff BDPJ Houston, LLC, for its Complaint against Defendant Continental Casualty Company, alleges as follows:

### PARTIES, JURISDICTION, VENUE

1.      Plaintiff BDPJ Houston, LLC ("BDPJ") is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business in Houston, Texas.  BDPJ's business operations are also located in Maricopa County, Arizona. BDPJ was formed on April 12, 2005 by its members, Brian Lesk and Paul Jorgenson, to purchase and own a commercial office building in Houston, Texas.

2.      Upon information and belief, Defendant Continental Casualty Company ("CNA") is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located in Chicago, Illinois.  CNA is duly licensed and qualified to transact and actually transacts the business of insurance in Arizona.

3.      BDL Financial, LLC ("BDL") is an Arizona limited liability company.  During the relevant time period, CNA issued to BDL an errors and omissions insurance policy covering BDL as the insured.  As detailed below, pursuant to a Settlement Agreement and Assignment of Claims dated September 16, 2009, BDL assigned to BDPJ all of BDL's rights, title and interest in and to BDL's claims against CNA arising out of CNA's actions and failures to act in connection with the errors and omissions policy CNA issued to BDL.  BDPJ brings this action against CNA as BDL's assignee.

4.      This Court has subject matter jurisdiction over this action pursuant to the Arizona Constitution, Art. VI, § 14 and A.R.S. § 12-123.

5.      The Court has personal jurisdiction over CNA as its purposeful business activities caused events to occur in whole or in part in Arizona out of which BDPJ's claims arise.

6.      Venue is proper in Maricopa County as CNA caused events to occur in Maricopa County out of which BDPJ's claims arise.

7.      The amount in controversy exceeds this Court's minimum jurisdictional requirement.

1
2
**FACTUAL ALLEGATIONS**

3
4
5
6
7

8.     BDL was formed in 2004 to serve as an insurance broker for the clients of a professional employers' organization ("PEO") called DHR Holding Co., Inc. ("DHR"). When BDL was formed, Dana Achtzehn was President, the managing member was Barrec, LLC, and the members were Paul Jorgenson, Daniel Wheeler and Joseph Beers.

8
9
10
11
12
13

9.     In May 2008, DHR Holding Co., Inc. became the sole member and BDL Financial 2, LLC became the sole manager of BDL. During the time periods at issue in this matter, Brian Lesk was the President, CEO and Secretary of DHR. At no time has BDPJ held an ownership interest in or operated, controlled or managed BDL.

14
15
16
17

10.     BDL purchased an errors and omissions ("E&O") insurance policy from defendant CNA, effective September 1, 2004, Policy Number AGA 0274746402 (the "E&O Policy"). Under the E&O Policy, CNA provided BDL with $2 million in coverage for E&O claims.

18
19
20
21

11.     On October 13, 2005, BDPJ purchased a commercial office building located at 6150 Richmond Avenue in Houston, Texas (the "Property"). The Property is a 36,000 square foot, two-story building located on 1.8 acres of land in Houston near the Galleria.

22
23
24
25

12.     At the time BDPJ purchased the Property, BDPJ requested that BDL obtain appropriate property and casualty insurance coverage for the Property. BDL told BDPJ that BDL had procured the requested coverage.

26
27

*Cohen Kennedy Dowd & Quigley*

3

13.     Unbeknownst to BDPJ, while BDL claimed to have procured appropriate insurance coverage for the Property, BDL in fact erroneously added the BDPJ Property as a new location on an existing insurance policy BDL had previously secured for DHR from Zurich North America (the "Zurich Policy"), rather than properly obtaining a separate policy for BDPJ.

14.     On February 4, 2008, again unbeknownst to BDPJ, Zurich sent a non-renewal notice on the Zurich Policy, effective May 12, 2008, to DHR and BDL. BDPJ did not receive the non-renewal notice.

15.     The Zurich Policy lapsed on May 12, 2008.

16.     BDL negligently failed to secure replacement property and casualty insurance coverage for the Property or to inform BDPJ that the Zurich Policy had lapsed and the Property was uninsured.

17.     On September 13, 2008, Hurricane Ike struck the Houston area causing massive wind and water damage to the Property, including damaged sheetrock throughout the building, substantial damage to the parking structures and severe flooding throughout the Property.

18.     Immediately after the Hurricane struck, BDPJ informed BDL of the loss and met with BDL's Mr. Achtzehn in Phoenix to discuss the damage and how BDL would handle the claim. BDL told BDPJ that it would promptly inform Zurich of the claim and ensure that the claim was timely handled and paid.

19.     Throughout the week of September 15, 2008, BDPJ repeatedly asked BDL about the status of the claim. BDL assured BDPJ that it was being processed. Thereafter, however,

4

BDL began to ignore BDPJ's numerous inquiries about the claim and the property manager for the Property informed BDPJ that neither BDL nor an insurer had followed up on the claim.

20.   On or about September 23, 2008, BDL's Mr. Achtzehn resigned as President of BDL and gave his two-week notice.   BDL continued to ignore BDPJ's numerous inquiries about the status of the claim.

21.   On or about September 29, 2008, BDPJ again contacted Mr. Achtzehn.   Mr. Achtzehn explained that BDPJ should not worry about the delay and that Zurich was "backlogged" due to the number of clams resulting from Hurricane Ike.

22.   On October 1, 2008, over two weeks after the Hurricane and after BDL had represented to BDPJ that the claim was being processed, Mr. Achtzehn confessed to BDPJ that the Zurich Policy had lapsed and that BDL had not procured alternate insurance coverage for the Property.  BDL assured BDPJ that because of BDL's mistake, the damage to the Property would be covered under BDL's E&O. Policy issued by CNA.

23.   Mr. Achtzehn contacted CNA on or about October 1, 2008 and provided notice of the claim.   The next day, Mr. Achtzehn met with BDL's Chief Operating Officer, Terri O'Neal-Boyd, to review pending projects and review the E&O claim process.   During this meeting, Mr. Achtzehn admitted that he had simply made a mistake in failing to obtain insurance coverage for the Property.

24.   BDL then contacted the CNA Claims Consultant assigned to the E&O claim, who informed BDL that CNA would not consider a claim under BDL's E&O Policy to exist until a demand letter was received from BDL's client.  CNA instructed that a demand be made

5

by DHR, the named insured on the lapsed Zurich Policy to which BDL had erroneously added coverage for BDPJ's Property.

25.   CNA further advised that BDL and BDPJ should take steps to mitigate damage and begin cleanup and repair of the Property. Based on CNA's direction, on or about October 2, 2008, BDL obtained a letter from DHR, on DHR letterhead, addressed to CNA requesting coverage for the loss.

26.   Based on CNA's instruction to mitigate damages, BDPJ authorized certain limited cleanup and repair efforts. CNA then refused to pay for the mitigation-related work and a mechanics and materialman's lien has been placed on the Property.

27.   Upon learning that it had not obtained insurance on the Property, BDL began working to obtain appropriate property and casualty coverage. Because of the severe damage to the Property caused by the Hurricane, BDL had difficulty obtaining insurance coverage for the Property. BDL ultimately secured coverage effective October 10, 2008 through Landmark American Insurance Company ("Landmark"). The Landmark Policy is significantly more expensive than the previous cost to BDPJ as the Landmark Policy was procured post-Hurricane on an extensively impaired asset. Further, the Landmark Policy has a $5,000 deductible and a $100,000 minimum deductible for Named Storms. The Zurich Policy had only a $5,000 deductible without a separate deductible for Named Storms.

28.   On or about October 21, 2008, CNA appointed counsel to represent BDL in connection with BDPJ's claim. That same day, CNA sent BDL a reservation of rights letter, falsely stating that the Property was "owned by DHR."

29.     In early November 2008, CNA-appointed counsel recommended to CNA that it cover the loss, that BDL was at fault for failing to procure or maintain coverage for the Property and that the loss would likely be in the $1.5 to $2 million range. The CNA-appointed counsel further urged CNA to "act on this matter this week, if at all possible." By this date, now over one month after CNA had received notice of the claim, CNA had yet to inspect the Property or take any perceptible action to mitigate or stem the losses caused by the damage to the Property.

30.     At no time during the period that CNA-appointed counsel was ostensibly working with BDPJ to adjust the loss did CNA state, or intimate, that CNA was investigating whether a policy exclusion might apply or that BDPJ's losses were not covered under the CNA E&O Policy.

31.     Despite the recommendation of CNA-appointed counsel, CNA did not timely or reasonably respond to BDPJ's claim or assist in repairing the Property. During this critical period, deterioration to the Property worsened and BDPJ's financial losses and BDL's corresponding exposure increased. As a direct result of CNA's failure to protect its insured and its delay in handling the claims, BDPJ was forced to retain outside counsel to pursue relief from BDL.

32.     Over the next several months, BDPJ's counsel communicated frequently with BDL's counsel to try to resolve BDPJ's claim. BDPJ repeatedly informed BDL of the urgency of the matter and the severe damage BDPJ was enduring.

7

33.     Finally, on December 4, 2008, CNA had an adjuster inspect the Property for the first time. Even after viewing the damage, CNA did not make a legitimate proposal to resolve the claim and continued to delay.

34.     Throughout December 2008, BDPJ forwarded documents and other information concerning its damages and the cost of repairing the Property. While confessing that it was "conscious of the time issue," CNA did not make reasonable efforts to resolve the claim or address the ever-increasing injury BDPJ was enduring.

35.     In mid-January 2009, four months after the Hurricane, weeks after providing CNA with repair cost information and with CNA not making a good faith effort to resolve the claim, BDPJ informed CNA that BDPJ's losses totaled between $1.6 million and $2.2 million and stated that "[t]his number is likely even higher, given the potential and continuing damage claims and losses... BDPJ will not know the total amount of its loss until all the repair work is performed, the Building restored to its pre-Hurricane condition and the dispute with tenants resolved." BDPJ offered to settle the claim for $1.8 million (within the $2 million CNA E&O Policy limit).

36.     CNA, despite previously inspecting the Property and receiving repair information, claimed it did not have sufficient information to respond to the $1.8 million demand. On or about January 23, 2009, BDPJ's counsel provided yet additional damage data and estimates of losses (including tenant relocation expenses and lost rent estimates) totaling $3.2 million. Further, BDPJ's counsel informed CNA that the Property's mortgagee was

8

threatening to declare a default. Accordingly, BDPJ offered to settle its claims against BDL for $2 million, the CNA E&O Policy limit.

37.    Immediately thereafter, CNA removed the lawyer it had appointed for BDL (and who had advised CNA that BDL was at fault and CNA should settle the claim) and replaced him with new CNA-appointed counsel. BDPJ immediately provided new counsel with detailed repair and damage information, informed him of the mortgagee's threat to declare BDPJ in default on its mortgage and warned that BDPJ's losses continued to increase. BDPJ also reiterated its $2 million demand.

38.    In response, and now nearly five months after the Hurricane damaged the Property, the counsel newly appointed by CNA requested another inspection of the Property. BDPJ accommodated CNA's duplicative request and the parties met at the Property on February 3, 2009 to review the damage. CNA took no action after this second inspection to resolve BDPJ's claim despite being provided with additional evidence of BDPJ's losses.

39.    CNA's delay and refusals left BDPJ with no reasonable alternative but to file an action against BDL for its negligence and gross negligence in failing to procure insurance coverage for the Property. On or about February 10, 2009, BDPJ sued BDL in Texas state court in a case captioned BDPJ Houston, LLC v. BDL Financial LLC, Cause No. 2009-08257, 151st Judicial District Court of Harris County, Texas (the "Texas Action") and provided CNA with a courtesy copy of the lawsuit.

40.    On or about February 13, 2009, after months of what BDPJ and BDL believed were actual negotiations with CNA concerning the amount of the claim, CNA abruptly

9

informed BDL that there was no coverage under the CNA E&O Policy.  CNA stated that because BDPJ and BDL were both "owned" in part by Brian Lesk, CNA would not provide coverage based on an ownership interest exclusion found in Section IV(A)(2)(c) in the E&O Policy.  [See February 13, 2009 Declination Letter, attached as Exhibit 1].

41.   Section IV(A)(2)(c) of the E&O Policy provides: "We [CNA] will not defend or pay any claim: A. whether arising directly or indirectly, by, on behalf of, or for the benefit of: … 2. the following: … c.      an individual or entity which has, or did have at the time of the wrongful act, a total of ten percent (10%) or more equity interest in an insured or operated, controls or manages the insured."

42.   CNA erroneously supported its coverage denial by stating that CNA had determined that Mr. Lesk held ownership interests in BDPJ, BDL and DHR and that Mr. Lesk had "at least a 10% ownership interest in" all three entities rendering Section IV(A)(2)(c) of the E&O Policy operative to deny coverage.

43.   CNA's explanation was incorrect and ownership exclusion did not apply.  BDPJ is owned by Brian Lesk and Paul Jorgensen.  BDL is owned by DHR and managed by BDL Financial 2, LLC.  For the quoted exclusion to apply, BDPJ would have to have a 10% or more ownership interest in BDL or operate, control or manage BDL.  BDPJ had no ownership interest in BDL and BDPJ did not operate, control or manage BDL.

44.   In addition to denying coverage, CNA stated it would no longer provide or pay for counsel to defend BDL against BDPJ's claim.  BDL retained new counsel at its own expense.  On or about February 24, 2009, BDL's counsel informed CNA that CNA's denial of

10

1   coverage was wrong and that CNA did not have a good faith basis to deny coverage because

2   "BDL has no financial interest in BDPJ, and BDPJ has no financial interest in BDL Financial",

3   therefore "[t]here is no cross-ownership between BDPJ and BDL." Nevertheless, on or about

4   March 9, 2009, CNA reiterated its coverage denial.

5   

6       45.    BDL did not have any good faith defenses to BDPJ's claims in the Texas Action.

7   On June 18, 2009, BDPJ filed a Motion for Summary Judgment against BDL on liability and

8   damages on all claims. BDPJ sought an award of $3,315,420. BDPJ also asked the court to

9   award exemplary damages and attorneys' fees and costs. BDL could not legitimately oppose

10  either liability or BDPJ's damages and, absent settlement, was exposed to a substantial punitive

11  damages award on the gross negligence claim.

12  

13      46.    BDPJ and BDL negotiated a resolution that included a consent judgment against

14  BDL in the amount of $3.5 million. On or about July 21, 2009, BDL's counsel presented CNA

15  with a copy of the proposed consent judgment. Given that BDL had no defenses and was

16  legitimately exposed to a damage award greater than the amount of the consent judgment, BDL

17  informed CNA of BDL's intent to consent to the judgment and enter a Damron Agreement

18  with BDPJ. BDL reiterated its demand that CNA withdraw its coverage denial and indemnify

19  BDL.

20  

21      47.    On or about August 26, 2009, CNA's rejected BDL's demand.

22  

23      48.    BDL and BDPJ stipulated to entry of the consent judgment in the Texas Action

24  and entered a final Settlement Agreement and Assignment of Claims dated September 16, 2009.

25  

26  

27

*Cohen Kennedy Dowd & Quigley*

11

The Texas court entered the consent judgment against BDL for $3.5 million on or about September 21, 2009.

49.     Under the Settlement Agreement and Assignment of Claims, BDL admitted that it negligently failed to maintain insurance on the Property.  BDL obtained a release from BDPJ for all liability in excess of the $3.5 million consent judgment and BDL assigned to BDPJ all of BDL's right, title and interest in and to any and all claims against CNA.

50.     The E&O Policy obligated CNA to treat BDL fairly and protect BDL from losses resulting from its own negligence.  BDL paid, and CNA accepted, premium payments to obtain this protection.  By wrongfully delaying and then denying coverage, and exposing BDL to substantial liability in excess of the E&O Policy limits, CNA is liable for all resulting damages assessed against BDL.  BDPJ is entitled to pursue these claims against CNA as BDL's assignee.

### FIRST CLAIM FOR RELIEF
#### (Breach of Contract)

51.     BDPJ repeats the allegations in paragraphs 1 through 50 of this Complaint.

52.     The E&O Policy is a contract between CNA and BDL wherein CNA agreed to provide indemnity and a defense for BDL's errors and omissions covered under the E&O Policy.

53.     BDL paid to CNA all premiums due under the E&O Policy and has performed all of its obligations under the E&O Policy.

12

54.     BDL properly assigned its claims against CNA relating to the E&O Policy to BDPJ in the Settlement Agreement and Assignment of Claims dated September 16, 2009.

55.     As detailed above, CNA materially breached its contractual obligations to BDL under the E&O Policy by, inter alia, failing to provide coverage and a defense for the losses covered under the E&O Policy and by failing to fairly evaluate and resolve the claim relating to BDL's negligent failure to procure insurance coverage for the Property when CNA had the reasonable opportunity to do so within the E&O Policy limits.

56.     Despite BDL's repeated requests for payment from CNA of the losses arising out of BDL's negligence and the resulting Texas Action, CNA has failed and refused to pay BDL or BDPJ the amounts due and owing under the E&O Policy.

57.     As a direct and proximate result of CNA's wrongful denial of coverage under the E&O Policy and its other breaches of contract set forth herein, CNA is liable for the full amount of the $3.5 million consent judgment against BDL plus the attorneys' fees incurred by BDL in the Texas Action after CNA withdrew BDL's defense.  Further, by virtue of its improper denial of coverage and a defense under the E&O Policy, CNA is barred from challenging BDL's liability or the reasonableness of the consent judgment.

58.     BDPJ and BDL have incurred and continue to incur costs and attorneys' fees in the prosecution of this action.  Because this action arises out of contract, BDPJ is entitled to recover its attorneys' fees pursuant to A.R.S. §12-341.01.

WHEREFORE, BDPJ, as assignee of BDL's claims against CNA, prays for judgment against CNA as follows:

13

A.   For compensatory damages in an amount to be proven at trial;

B.   For reasonable attorneys' fees, costs and expenses incurred pursuant to A.R.S. §
12-341.01 and other applicable law;

C.   For pre- and post-judgment interest on the awarded sums at the highest rate
permitted by law; and

D.   For such other relief as this Court deems proper.

## SECOND CLAIM FOR RELIEF
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

59.   BDPJ repeats the allegations in paragraphs 1 through 58 of this Complaint.

60.   An implied duty of good faith and fair dealing exists in every insurance policy,
including the E&O Policy.

61.   CNA owed BDL a duty of good faith and fair dealing in the handling of the
E&O claim.

62.   CNA's actions, conduct, tactics, failures to act, omissions and concealments
breached the covenant of good faith and fair dealing, CNA has acted in bad faith and deprived
BDL of its reasonably expected benefits under the E&O Policy.

63.   CNA acted unreasonably toward BDL and either knew it was acting
unreasonably or acted with such reckless disregard that such knowledge is imputed to CNA.

64.   CNA's unreasonable and bad faith conduct is set forth in detail above and
includes, but is not limited to:

a.   Failing to timely, adequately and accurately investigate, evaluate, and

14

Cohen Kennedy Dowd & Quigley

resolve BDPJ's claims against BDL;

b.   Failing to give fair consideration to BDL's interests when CNA delayed handling BDPJ's claim and then denied BDL coverage and a defense;

c.   Failing to give fair consideration to BDL in rejecting within-policy limits settlement offers made by BDPJ and instead exposing BDL to substantial excess liability;

d.   Using oppressive and unreasonable tactics to delay and then deny BDPJ's claims against BDL; and

e.   Denying coverage based upon a superficial, facially erroneous interpretation of a Policy exclusion.

65.   CNA's bad faith conduct stripped BDL of the rights and security to which it was entitled under the E&O Policy and subjected BDL to the very catastrophic liability that BDL sought to avoid by buying the E&O Policy.

66.   As a direct and proximate result of CNA's bad faith conduct, it is liable for the full amount of the $3.5 million consent judgment against BDL, plus additional damages, including attorneys' fees and costs, in an amount to be proven at trial.

67.   CNA's actions were intentional, aggravated and outrageous and were committed willfully and maliciously with the intent to cause injury to, or in deliberate disregard of an unjustifiably substantial risk of significant harm to BDL and BDPJ. BDPJ is therefore entitled to an award of punitive damages in an amount sufficient to punish CNA and to deter it and others similarly situated from engaging in like conduct in the future.

15

WHEREFORE, BDPJ, as assignee of BDL's claims against CNA, prays for judgment against CNA as follows:

A.    For compensatory damages in an amount to be proven at trial;

B.    For punitive damages in an amount sufficient to punish CNA and deter it and others similarly situated from engaging in similar conduct in the future;

C.    For reasonable attorneys' fees, costs and expenses incurred pursuant to A.R.S. § 12-341.01 and other applicable law;

D.    For pre- and post-judgment interest on the awarded sums at the highest rate permitted by law; and

E.    For such other relief as this Court deems proper.

RESPECTFULLY SUBMITTED this 21st day of April, 2010.

**COHEN KENNEDY DOWD & QUIGLEY, P.C.**
The Camelback Esplanade I
2425 East Camelback Road, Suite 1100
Phoenix, Arizona  85016
 Attorneys for Plaintiffs

By: _____
    Daniel G. Dowd
    John W. Shamblin
    Jill G. Bonnin

*Cohen Kennedy Dowd & Quigley*

16

**EXHIBIT B**

**Notice of Removal By Defendant Continental Casualty Company**

BDPJ Houston, LLC v. Continental Casualty Company

MICHAEL K. JEANES, CLERK
BY *T. Garcia*
DEP
FILED

**10 APR 21  PM 5:08**

1  *Cohen Kennedy Dowd & Quigley*
   *The Camelback Esplanade I*
2  *2425 East Camelback Road • Suite 1100*
   *Phoenix, Arizona 85016*
3  *Telephone 602•252•8400  Facsimile 602•252•5339*
   *E-mail filings@ckdqlaw.com*
4
   Daniel G. Dowd (012115) – DDowd@ckdqlaw.com
5  John W. Shamblin (018610) – JShamblin@ckdqlaw.com
   Jill G. Bonnin (022455) – JBonnin@ckdqlaw.com
6  Attorneys for Plaintiffs

7

8  ## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9  ## IN AND FOR THE COUNTY OF MARICOPA

10  BDPJ HOUSTON, LLC, a Texas Limited          Cause No: **CV2010-012465**
    Liability Company,
11
                    Plaintiff,                 **CERTIFICATE OF COMPULSORY**
12                                             **ARBITRATION**

13          vs.

14  CONTINENTAL CASUALTY COMPANY, an
    Illinois Corporation,
15
                    Defendant.
16

17

18      The undersigned certifies that he/she knows the dollar limits and any other limitations

19  set forth by the local rules of practice for the Arizona Superior Court, Maricopa County, and

20  further certifies that this case **is not** subject to compulsory arbitration, as provided by Rules 72

21

22

23

24

25

26

27

1   through 76 of the Arizona Rules of Civil Procedure.

2          RESPECTFULLY SUBMITTED this 21st day of April, 2010.

3                              **COHEN KENNEDY DOWD & QUIGLEY, P.C.**

4                              The Camelback Esplanade I
                              2425 E. Camelback Road, Suite 1100
5                              Phoenix, Arizona 85016
                               Attorneys for Plaintiff
6

7

8
                              By:
9                                   Daniel G. Dowd
10                                   John W. Shamblin
                                    Jill G. Bonnin
11

12   ORIGINAL filed and a COPY
     of the foregoing hand-delivered
13   this 21st day of April, 2010 to:

14   Arbitration Clerk
     **MARICOPA COUNTY SUPERIOR COURT**
15   201 West Jefferson Street, CCB 4th Floor
     Phoenix, Arizona 85003
16

17

18

19

20

21

22

23

24

25

26

27

*Cohen Kennedy Dowd & Quigley*